PETERSON, Judge.
Donald Adee (Owner) appeals a judgment entered in favor of a subcontractor, Great Southeast Carpet Gallery, Inc. (Sub). Sub brought a two-count complaint against Owner to collect payment for floor coverings installed by Sub in Owner’s new house. Count I of the complaint for foreclosure of a mechanic’s lien was involuntarily dismissed, and no appeal was made of that dismissal. In Count II, Sub sought damages for breach of contract, alleging that Sub and Owner had directly contracted for the installation of the floor coverings. After a non-jury trial, judgment was entered in favor of Sub on Count II, and this appeal followed. We reverse on the facts.
Owner contracted for the construction of a new house with Sims-Yeager Corporation (General). The contract provided allowances for floor coverings and other items. It was General’s standard practice to furnish to its customers a list of installers and suppliers of such materials. Although a customer was not obligated to select from among those on the list, General encouraged it. Sub had furnished floor coverings to General’s customers for about five years and was on the list. Owner went to Sub’s place of business and advised Sub he had an $8,000 allowance for floor coverings. Owner made his selections and signed a form “developed” by Sub.
The form provided blanks for such basic information as names, addresses, and phone numbers of the customer and the builder and a description of the materials. Owner’s name was entered as the customer, and the address of the unfinished house was entered as Owner’s address. The telephone numbers at Owner’s home and work were entered, but no entry was made in the blank provided for a billing address under the customer’s name. General’s name and phone number were entered in the blanks provided for that information. ■ Blanks were also provided for “amount owed by builder” and “amount owed by customer.” Sub entered $6,997.03 as the amount owed by General but entered nothing to indicate any amount was owed by Owner. These provisions were followed by a schedule for the entry of dates and materials that appeared to be for logistical management by Sub. This schedule was followed by:
Unless other arrangements have been made, final payment is due at the time of installation. I agree to pay an interest charge of 1.5% per month on overdue bills. If a suit is filed to collect this bill,. the customer agrees to pay all attorneys fees. Cancelled orders are subject to a 25% restocking charge. Installers are not responsible for cutting doors.
Signature /s/ D. Adee 9/12/86 Sales Person /s/ Nelson Green
THIS INSTALLATION HAS BEEN COMPLETED TO MY SATISFACTION.
Signed_ Date_
Owner admitted signing the form at his initial meeting with Sub but testified he thought the form was a work order that *411 memorialized the floor covering selections, and that General was to pay for the selections. Owner also testified that Nelson Green, Sub’s representative, told him that General was slow in paying and to remind General to pay within two weeks of installation. Green confirmed that he commented about General’s slow payment history. He stated, however, that Sub and Owner had agreed that Owner was primarily responsible and that General was billed simply as an accommodation to Owner since the construction mortgagee was disbursing funds directly to General. Owner denied he ever agreed to be responsible for payment to Sub.
Sometime prior to the installation of the floor coverings on December 5, 1986, General delivered to Sub as partial payment a check for $3,109.58 postdated November 10, 1986. The check was dishonored by the bank. Unsuccessful efforts were made by Sub to collect from General. Sub sent a final notice to General on January 16, 1987, as well as a second final notice on January 20, 1987, indicating that a balance of $7,767 was due. After numerous attempts by mail and personal contacts to collect the balance from General, Sub mailed a letter to General on February 4, 1987. In the letter, Sub demanded payment, claiming that it had performed the work based on General’s promises to pay. General responded by delivering a promissory note to Sub “for all labor and material furnished on the Adee job, provided that the amount due on the note would be reduced by any payments made by the construction mortgage or the Adees.” Ultimately, General’s principals were personally discharged in bankruptcy, leaving General without funds. Prior to the discharge, however, Owner had paid General in full for construction of the house.
Although Sub continually attempted to collect payment from General, it made little contact with Owner between the time the floor coverings were ordered and six months later when it filed the instant action in the trial court. Sub served a claim of lien upon Owner on February 3, 1987. The claim stated that a notice to owner had been served on Owner on December 1, 1986, and that it had furnished labor, services, and/or materials in accordance with á contract with General. (The notice to owner appears in the record, but a conflict arose as to whether the notice to owner was ever served on Owner.) Sub contended that it sent a bill to Owner and to the construction mortgagee around the time of installation, but Owner testified that Sub made no demands upon him for payment prior to the filing of the action leading to this appeal. An officer with the construction mortgagee testified she received a bill from Sub dated December 2, 1986, and Owner testified that, if indeed a statement had been sent to him at the address of the construction site, he would not have received it since he had not moved into the unfinished house. Finally, on May 20, 1987, Sub executed a contractor’s final affidavit pursuant to section 713.06(3)(d), Florida Statutes, and served it on Owner on June 1, 1987.
To reach its decision, the trial court had to find that a direct contract had been formed between Sub and Owner since this was the theory of recovery advanced in the pleadings. There was no competent substantial evidence, however, to show that a direct contract had been formed between Owner and Sub. Freeman v. Lane, 504 So.2d 1297 (Fla. 5th DCA 1987).
Sub’s position that Owner was responsible for payment for the floor coverings is supported neither by the documentary evidence nor by Sub’s course of action in this case. To the contrary, Sub’s entire course of action subsequent to installation was consistent with the debt being owed by the builder. Furthermore, while the form developed by Sub was ambiguous, it is clear from Sub’s own entries upon it that $6,997.03 was owed by General and nothing was owed by Owner. It was Sub who wrote the full amount of the price in the blank entitled “Amount Owed by Builder” and who entered nothing next to the blank entitled “Amount Owed by Customer.” Sub accepted a postdated check and then a promissory note from General. Sub contacted General on many occasions for payment, filed a claim of lien indicating a *412 contract with General, and attempted to comply with the mechanic’s lien law, all in a manner indicative of a subcontractor not in privity with an owner. It was also Sub who had an established business relationship with General beginning in 1981 in which residential projects did not involve direct payment by an owner. While we are most reluctant to reverse a trial court’s decision based upon a review of the evidence, we must do so when that decision is not supported by competent substantial evidence.
That portion of the final judgment awarding $6,997 to Sub is reversed, and the motions for attorneys fees on appeal are denied.
REVERSED.
DAUKSCH and HARRIS, JJ., concur.