HARRIS, Judge.
Appellants, Terrold R. Brewer and Mary Jo Brewer, his wife, timely appeal from a final judgment in favor of appellee, Lighting Unlimited of Florida, Inc. The case involves a claim for the sale of electrical fixtures used in the construction of the Brewers’ new home.
The Brewers contracted with Gregory Nuetzi, a builder-architect, for the construction of a new residence. The contract between the parties provided that:
The Design/Builder shall be responsible for and shall coordinate all construction means, methods, techniques, sequences and procedures.
These services shall be furnished on a cost-plus basis. In this manner, the Design/Builder shall solicit bids from all applicable disciplines, (electric, plumbing, air-conditioning, etc.). The Design/Builders statements to the owner will include copies of all subcontractors *53 and material suppliers invoices as they are received by the Design/Builder.
The suppliers included Marion Electric Contractors and Lighting Unlimited. The Brewers arranged financing through Barnett Bank of Ocala. A note and mortgage for $132,000.00 were given to Barnett which secured a portion of the construction cost of the residence. The Brewers were given advances pursuant to a schedule as the job progressed and they deposited these advances into their personal account. Nuetzi billed the Brewers for the work of the subcontractors and the supplies and appellants reimbursed him. During the construction of the home, Nuetzi instructed the Brewers to go to Lighting Unlimited of Florida, Inc.’s showroom to pick out certain fixtures for their new home. The Brewers visited the showroom and looked at various fixtures.
Lighting Unlimited then met with Nuetzi and Marion Electric, the electrical subcontractor, to discuss the necessary fixtures for the home. Because Marion Electric had an open account with Lighting Unlimited, it was agreed that Marion Electric would be billed; it in turn would bill Nuet-zi.[1] Lighting Unlimited never opened an account in the Brewers’ name and never billed them. The Brewers received timely invoices from Nuetzi which listed all suppliers including Lighting Unlimited and they sent checks to Nuetzi in payment.
When the house was nearing completion, the Brewers called Lighting Unlimited to discuss step and garden lighting. This lighting was apparently not part of the original order or list. They picked out certain fixtures which Lighting Unlimited ordered. Lighting Unlimited opened an account for Nuetzi at that time. Apparently there were problems with some of these fixtures and several were returned and exchanged during this period.
Lighting Unlimited, at some point, became aware that Nuetzi was having financial trouble and alleged that the Brewers assured it that it would be paid at closing. The Brewers deny ever making such statements. On November 19, Lighting Unlimited notified Barnett Bank that a balance remained outstanding on both the Nuetzi and Marion Electric Accounts. Two subsequent letters were sent to Barnett on December 3 and December 28, 1990. A copy of the December 28 letter was also sent to the Brewers. The Brewers contend that they paid all invoices submitted by Nuetzi, including the invoices for the material supplied by Lighting Unlimited. Lighting Unlimited contends that it was not paid for the garden and step lighting.
At closing Nuetzi’s Final Contractor’s Affidavit showed that he owed more than the final draw. Barnett Bank refused to make the final progress payment and Barnett filed an interpleader against the Brewers, Nuetzi, and each of the subcontractors and suppliers. A judgment of interpleader was entered leaving approximately $17,000 in the court’s registry. After the inter-pleader judgment was entered, Lighting Unlimited filed a crossclaim against the Brewers for breach of contract, delivery of goods and services, and unjust enrichment for failure to pay the unpaid bills. The Brewers asked the court to determine whether privity existed between the Brewers and the subcontractors. Following a hearing, the trial court held that the Brewers were in privity with Lighting Unlimited, and entered judgment against the Brewers in the amount of $2,762.47. They now appeal. We reverse.
The Brewers contend that the trial court erred in finding privity of contract between them and Lighting Unlimited. Lighting Unlimited responds that because of the continuing contact between the parties and the assurances of the Brewers, privity of contract existed.
We addressed the privity question in a factually similar case, Adee v. Great Southeast Carpet Gallery, 562 So.2d 409 (Fla. 5th DCA 1990). In Adee, a subcontractor brought a breach of contract action against an owner seeking compensation for *54 floor coverings placed in a house for which the owner had received allowance from the contractor. The trial court entered a judgment in favor of the subcontractor and this court reversed, finding insufficient evidence that a direct contractual relationship existed between the subcontractor and the owner. In Adee, the contractor provided a list of installers and suppliers to the owner. The owner then chose a subcontractor and went to that subcontractor’s place of business and advised the subcontractor that he had an $8,000 allowance for floor coverings. The owner made his selections and signed a form on which his name was entered as customer and the address of the unfinished home was entered as his address. The contractor’s name was then entered as contractor with the amount of $6,997.03 entered as “amount owed by builder.” “Amount owned by customer” was left blank. The owner alleged that he signed the form thinking it was a work order and the contractor was responsible for payment. The subcontractor alleged that he and the owner agreed the owner was primarily responsible for the debt and the contractor was being billed simply as an accommodation to the owner. The owner paid the contractor in full for the construction of the house. The contractor made a partial payment to the subcontractor by check which was dishonored. After the subcontractor sent a number of past due notices to the contractor, the contractor delivered a promissory note in the amount owed. The trial court found that a direct contract had been formed between the owner and the subcontractor. This court found that neither the documentary evidence nor the subcontractor’s course of action was consistent with a debt being owed by the owner and thus there was insufficient evidence to support the trial court’s judgment.
In the instant case, the record does not contain sufficient evidence to support the trial court’s finding that privity of contract existed between the parties. The owners in this case contracted with an architect builder for the construction of their new home. They received advances on their construction loan which they used to pay the contractor. The contractor in turn reimbursed the subcontractors and suppliers. Until a courtesy account was opened in Nuetzi’s name with Lighting Unlimited, Nuetzi reimbursed Marion Electric who held the open account with Lighting Unlimited. As in Adee, the owner visited Lighting Unlimited’s showroom and picked out fixtures; however, at no time did they contract with Lighting Unlimited. Mary Jo Brewer’s signature appears on one invoice dated September 17, 1990, under “purchased and/or received by” and signed when she picked up certain fixtures at the showroom. This same invoice lists Nuetzi as the “customer.” Furthermore, Lighting Unlimited admits that it received payment for a number of its earlier bills from Marion Electric. Lighting Unlimited does not claim that it ever received payments from the Brewers who never had an account with appellees and never received direct billings from Lighting Unlimited. The record here, as in Adee, does not support the trial court’s finding that contractual privity existed between these parties.
REVERSED and REMANDED.
W. SHARP, and GRIFFIN, JJ., concur.

. The record contains a number of invoices dated between September 12, 1990 and March 17, 1991. Seven of the invoices are made out to Marion Electric on the "Brewer job”. Two invoices are made out to Nuetzi and marked "delivery to Marion Electric.”